# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

HECTOR LEBRON,
        Petitioner,

   vs.                                                    CR No. 05-24-ML
                                                        CA No. 12-428-ML

DUKE TERRELL,
        Respondent.


HECTOR LEBRON
        Petitioner,

   vs.                                                    CR No. 05-24-ML
                                                       CA No. 13-48-ML

FRANK STRADA,
        Respondent.


**MEMORANDUM AND ORDER**

Before the Court are two petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner Hector Lebron, which the Court will refer to as the "Second Petition" (Doc. No. 1 in CA No. 12-428) and the "Third Petition" (Doc. No. 1 in CA No. 13-48). In the Second Petition, Lebron alleges that his trial counsel was ineffective. In the Third Petition, Lebron requests a Franks hearing.[1]

In conjunction with the Second Petition, Lebron has also filed a motion for a bail hearing (Doc. No. 6 in CA No. 12-428) and a motion for release of documents (Doc. No. 7 in CA No. 12-428). Additionally, in conjunction with the Third Petition, Lebron has filed another motion for a bail hearing (Doc. No. 4 in CA No. 13-48 )(collectively, the "Additional Motions"). For the reasons that follow, the Second Petition and Third Petition are DISMISSED and the Additional Motions are DENIED as moot.

---

[1] See Franks v. Delaware, 438 U.S. 154 (1978).

FACTUAL BACKGROUND AND TRAVEL

I.   Facts[2]

On March 3, 2006, after having pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), Lebron was sentenced by this Court to 120 months imprisonment on each count, to run concurrently.  Lebron did not file a direct appeal.[3]

Prior to pleading guilty, Lebron, through counsel, had filed a motion to suppress evidence acquired from the searches of his apartment and vehicle on the date of his arrest, on the basis that the search warrants were not validly signed  (Doc. No. 30 in CR No. 05-24).  He also filed a motion for a handwriting exemplar (Doc. No. 35 in CR No. 05-24).  After hearing, both motions were denied.

II.   Travel

On October 14, 2011, Lebron filed a petition seeking habeas relief under 28 U.S.C. § 2241 in the Eastern District of New York ("EDNY"),[4] which that court treated as a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 ("First Petition").  The First Petition (Doc. #53 in CR No. 05-24) was transferred to this Court, which also construed it as a motion under § 2255, on October 26, 2011.  The only ground raised in the First Petition was that Lebron's Fourth Amendment rights had been violated based on the searches of his apartment and vehicle, without showing him a valid warrant and

---

[2] The facts relating to Lebron's arrest and indictment are recounted in this Court's Memorandum and Order dated January 20, 2012 (Doc. No. 58 in CR 05-24 ("1/20/12 M&O")), and need not be repeated here except to the extent that they pertain to the Second and Third Petitions.

[3] Subsequent to his sentencing, Lebron filed a motion for reduction of sentence based on the 2007 crack cocaine Guideline amendments (Doc. No. 49 in CR No. 05-24).  That motion was denied on June 2, 2008.

[4] Lebron was, and is, incarcerated at the Metropolitan Detention Center in Brooklyn, NY.

without his consent, resulting in his subsequent arrest and detention.  In a Memorandum and Order dated January 20, 2012 (Doc. No. 58 in CR 04-24) ("1/20/12 M&O"), this Court dismissed the First Petition as untimely, (1/20/12 M&O at 4),[5] and found the case not appropriate for the issuance of a Certificate of Appealability ("COA"), (id. at 5).  Lebron appealed to the Court of Appeals for the First Circuit (Doc. No. 60 in CR 05-24), which denied a COA and terminated his appeal in a judgment entered on April 30, 2012 (Doc. No. 66 in CR No. 05-24).

Lebron filed the Second Petition in the EDNY on May 29, 2012.  Although he characterized it as a "writ of habeas corpus, pursuant to Title 28 U.S.C. 2241(c)(3)," (Second Petition at 1), that court again construed the Second Petition as brought pursuant to 28 U.S.C. § 2255 and transferred it to this Court on June 4, 2012.  This Court also treats the Second Petition as arising under § 2255.[6]  The Government was

---

[5] The Court found that judgment of conviction was entered on March 3, 2006, and that Lebron did not file a direct appeal.  (1/20/12 M&O at 4.)   His conviction, therefore, became final on or about March 13, 2006, and his deadline for filing a motion under § 2255 was March 13, 2007.  (Id.)  The Court noted that the First Petition was filed more than four years after the deadline.  (Id.)

[6] Although Lebron titled the Second Petition as a "writ of habeas corpus, pursuant to Title 28 U.S.C. 2241(c)(3)," (Second Petition at 1), it clearly falls within the parameters of § 2255.  Lebron is attacking the validity of his conviction and sentence, not the execution thereof.  See United States v. Barrett, 178 F.3d 34, 50 n.10 (1st Cir. 1999); see also (Second Petition at 19-21) (arguing that police did not have a valid warrant when they searched his apartment); (id. at 21)(referring to illegal entry into his residence and illegal detention).  As the First Circuit stated in Trenkler v. United States, 536 F.3d 85 (1st Cir. 2008):

> A close analysis of the substance of the petition in this case leaves no doubt but that, regardless of its label, the petition falls within the compass of section 2255.  On its face, the petition is brought on behalf of a federal prisoner still in custody and challenges his sentence as unauthorized under the statutes of conviction.  This is a classic habeas corpus scenario, squarely within the heartland carved out by Congress in section 2255.

Id. at 97; cf. id. ("We think it follows that when a statute–like section 2255–specifically addresses a particular class of claims or issues, it is that statute ... that takes precedence.").

As the Court recognized with regard to the First Petition, ordinarily a prisoner is entitled to notice and an opportunity to be heard when a court recharacterizes an otherwise-labeled filing as a § 2255 motion.  See Castro v. United States, 540 U.S. 375 (2003); see also M&O if 1/20/12 at 3 n.3.  Here too, however, such notice is unnecessary because Lebron was on notice that his Second Petition was being treated as a § 2255 motion.  In its transfer order, the EDNY clearly indicated that the Second Petition was one brought under § 2255, and the Government's objection also indicated that the Second Petition was in reality a § 2255

directed to file a response to the Second Petition (Doc. No. 4 in CA No. 12-428), which it did on June 29, 2012 (Doc. No. 8 in CA 12-428; Doc. No. 68 in CR No. 05-24) ("Objection"). Lebron filed a reply on July 13, 2012 (Doc. No. 9 in CA No. 12-428; Doc. No. 69 in CR No. 05-24) ("Reply").

Subsequently, on January 2, 2013, Lebron filed yet another petition, the Third Petition, in the EDNY. Although again titled as a petition arising under § 2241, that court, as does this Court, treated the Third Petition as a § 2255 motion.[7] The Third Petition was transferred to this Court on January 17, 2013.

## DISCUSSION

I.    The Second Petition

Substantively, Lebron alleges in the Second Petition that his trial counsel was ineffective. (Second Petition at 13.) In arguing that this claim is a substantial one, he also contends that his residence was entered without a valid search warrant. (Id. at 17.) However, the question before this Court is procedural: whether Lebron has an avenue by which to present his claim. See United States v. Barrett, 178 F.3d 34, 42 (1st Cir. 1999)(noting that petitioner's underlying claim was before the court "only to the extent that the nature of that claim is relevant to the determination of whether there is a means available for asserting it").

---

motion. Although he titled his response to the Government's objection "Hector Lebron Objection to the Government Response Pursuant to Title 28 U.S.C. 2241(c)(3) for Immediate Release from Detention due to a Change of Law in the Supreme Court of the United States, Martinez v. Ryan, U.S., No. 10-1001, March 20, 2012," nowhere in that document does he contest the recharacterization.

    Moreover, as was the case with the First Petition, notice is unnecessary because the Second Petition is untimely. Celikoski v. United States, 21 Fed. Appx. 19, 22 (1st Cir. 2001)(noting that district courts should not *sua sponte* dismiss § 2255 motions as untimely without giving the petitioner notice and an opportunity to be heard unless "it is unmistakably clear from the facts alleged in the petition, considering ... [all the circumstances, including equitable tolling] that the petition is untimely")(alterations in original); accord United States v. Martin, 357 F.3d 1198, 1200 (10th Cir. 2004)(deeming district court's failure to give notice of recharacterization of petition as a § 2255 motion harmless error where § 2255 motion was clearly untimely).

    [7] See n.6.

Lebron makes essentially three arguments in support of his contention that the Court should consider the Second Petition. First, he asserts that the United States Supreme Court's recent decision in Martinez v. Ryan, 132 S.Ct. 1309 (2012), allows him to proceed with the Second Petition. Second, Lebron asserts that he is actually innocent of the crimes for which he was convicted and that, therefore, his claim cannot be procedurally barred. Finally, he states that if his claim of actual innocence is procedurally barred, the result would be a complete miscarriage of justice which would render § 2255 inadequate and ineffective.

    A.    Section 2255 and AEDPA

Section 2255 states that:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Section 2255 was intended by Congress to provide a federal prisoner with an exclusive means of challenging the validity of his conviction or sentence, except in those few circumstances in which the statutory remedy proved "inadequate or ineffective to test the legality of his detention." Trenkler v. United States, 536 F.3d. 85, 96 (1st Cir. 2008)(quoting 28 U.S.C. § 2255(e)). Since its enactment in 1948, § 2255, rather than § 2241,[8] has been the usual avenue for federal prisoners seeking

---

[8] Section 2241(c) provides in relevant part that:

> The writ of habeas shall not extend to a prisoner unless--
>     ....
>     (3) He is in custody in violation of the Constitution or laws or treaties of the United States ....

28 U.S.C. § 2241(c).   Federal prisoners are permitted to use § 2241 to attack the execution, rather than the

to challenge the legality of their confinement. In re Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997).

In 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). Trenkler, 536 F.3d at 96.

> That statute imposed significant new constraints on proceedings under section 2255. Some of these constraints were temporal; for example, AEDPA established a one-year statute of limitations for filing a section 2255 petition. 28 U.S.C. § 2255(f). Some of these constraints were numerical; for example, AEDPA required a federal prisoner who sought to prosecute a second or successive section 2255 petition to obtain pre-clearance, in the form of a certificate, from the court of appeals. Id. § 2255(h). By the terms of the statute, such a certificate will be made available only if the prisoner can show that the proposed second or successive petition is based either on newly discovered evidence or a new rule of constitutional law. Id. We have interpreted this provision as "stripping the district court of jurisdiction over a second or successive habeas petition unless and until the court of appeals has decreed that it may go forward." Pratt v. United States, 129 F.3d 54, 57 (1st Cir. 1997).

Id. (footnote omitted); see also Trenkler, 536 F.3d at 100 ("Implicit in the scheme created by AEDPA is the notion that certain claims, which might have been fruitful if timely asserted, may be foreclosed when a convicted defendant sleeps upon his rights.").

Not every numerically second petition is considered "second or successive." For example, "a numerically second or successive petition is not 'second or successive' if it attacks a different criminal judgment or if the earlier petition terminated without a judgment on the merits." Pratt, 129 F.3d at 60. However, a § 2255 petition that was properly dismissed as time-barred under AEDPA constitutes an adjudication on the merits for successive purposes. Villanueva v. United States, 346 F.3d 55, 61 (2d Cir. 2003); see also id. at 58 (holding that a first petition that was properly dismissed as time-barred under AEDPA has been adjudicated on the merits such that authorization from the circuit court is required before

---

validity, of their sentences. United States v. Barrett, 178 F.3d at 50 n.10; see also Villanueva v. United States, 346 F.3d 55, 63 (2d Cir. 2003). However, § 2241 is reserved for rare cases. In re Dorsainvil, 119 F.3d 245, 250 (3d Cir. 1997); see also Barrett, 178 F.3d at 52 (noting that "habeas corpus relief under § 2241 remains available for federal prisoners in limited circumstances").

filing a second or successive § 2255 petition); Cook v. Ryan, Civil Action No. 12-11840-RWZ, 2012 WL 5064492, at *2 (D. Mass. Oct. 15, 2012)(noting that majority of courts that have considered the issue have concluded that the dismissal of a petition as time-barred is an adjudication on the merits for successive purposes). Because the First Petition was properly dismissed as untimely, which Lebron does not contest in his filings, the Second Petition is second or successive for purposes of AEDPA. See Barrett, 178 F.3d at 45 (noting that because earlier petition challenged the same judgment as the second petition, there was no new judgment or amendment of sentence, the second petition was not covered by any exceptions, and the prior petition was dismissed on the merits, the second petition was 'second or successive'").[9]

AEDPA did not eliminate the "savings clause" or "safety valve" contained in § 2255. See Pratt, 536 F.3d at 96-97. According to § 2255(e):

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e). Neither the savings clause nor § 2241, however, may be used to circumvent AEDPA's restrictions. See Trenkler, 536 F.3d at 98-99 ("Although the petitioner might now be unable to pursue that claim via a second or successive petition because of the combination of his own tardiness and AEDPA's gatekeeping provisions, the mere inability to satisfy those requirements does not afford access to the savings clause. See [Barrett, 178 F.3d.] at 50. To rule otherwise would reduce AEDPA's gatekeeping provisions to 'a meaningless gesture.'"); United States v. Brooks, 230 F.3d 643, 647 (3d Cir. 2000)("We do not suggest that § 2255 would be inadequate or ineffective so as to enable a second petitioner to invoke § 2241 merely because that petitioner is unable to meet the stringent gatekeeping

---

[9] In fact, Lebron describes the Second Petition as "successive." (Reply at 1.)

requirements of the amended § 2255. Such a holding would effectively eviscerate Congress's intent in amending § 2255.")(quoting Dorsainvil, 119 F.3d at 251).

    B.    Martinez

Lebron argues that the Supreme Court decision in Martinez allows a federal court to excuse a petitioner's procedural default, as a matter of equity, if the default was the result of counsel's ineffectiveness or if there was no counsel at all. (Second Petition at 12.) Thus, he contends that a change in constitutional law[10] applies to him retroactively, (Reply at 1), potentially excusing his prior untimely petition under 28 U.S.C. § 2255. The Government counters that Lebron, having unsuccessfully litigated an untimely § 2255 motion (the First Petition), has filed a successive motion based upon a purported change in law. (Government's Memorandum in Support of Its Objection to Defendant's Second Motion to Vacate, Set Aside or Otherwise Correct Sentence at 1.) According to the Government, the Second Petition should be denied and dismissed as Lebron has failed to cite to any new constitutional law which applies to him retroactively. (Id.)

In Martinez, the United States Supreme Court addressed the question of whether a federal habeas court may excuse a procedural default of a claim of ineffective assistance of counsel when the claim was not properly presented in state court due to an attorney's errors in an initial-review collateral proceeding. Martinez, 132 S.Ct. at 1313. The Supreme Court held that:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at

---

[10] Somewhat contradictorily, Lebron next states that he "does not assert[] that a change of constitutional law applies to him retroactively," (Reply at 1-2), but, rather, challenges an "intervening change of law in Martinez v. Ryan," (id. at 2). He cites Davis v. United States, 417 U.S. 333 (1974), for the proposition that his claim does not have to be of constitutional dimension when it is an intervening change of law. (Reply at 2.)

> trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington. To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

Id. at 1318 (citations omitted); see also id. at 1320 ("Where, under state law, claims of ineffective-assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.").

Petitioner's reliance on Martinez is misplaced for several reasons. First, the Martinez Court described its ruling as an equitable, not constitutional, one. See id. at 1318-19; see also Buenrostro v. United States, 697 F.3d 1137, 1139 (9th Cir. 2012)("Martinez cannot form the basis for an application for a second or successive motion because it did not announce a new rule of constitutional law."); Adams v. Thaler, 679 F.3d 312, 323 n.6 (5th Cir. 2012)("Martinez does not provide a basis for authorization under § 2244(b)(2)(A), as the Court's decision was an 'equitable ruling' that did not establish 'a new rule of constitutional law.'"). But see Dickens v. Ryan, 688 F.3d 1054, 1071-72 (9th Cir. 2012)(noting that the Martinez ruling was a narrow equitable ruling and not a constitutional ruling, but remanding for district court to consider petition in light of Martinez).

Second, the circumstances in Martinez differ from the situation here. Martinez involved a state prisoner and state procedural rules. See Martinez, 132 S.Ct. at 1313-16. As the Ninth Circuit stated:

> Martinez cannot form the basis for Buenrostro's application because Martinez concerns procedural default based on ineffective assistance of habeas counsel in state habeas proceedings. Here, Buenrostro is a federal prisoner who wishes to collaterally attack the legality of his federal conviction or sentence under 28 U.S.C. § 2255. Martinez is inapplicable to federal convictions and thus inapplicable to Buenrostro's application.

-9-

Buenrostro, 697 F.3d at 1140 (internal citation omitted); see also Ibarra v. Thaler, 687 F.3d 222, 226 (5th Cir. 2012)(noting that Supreme Court in Martinez "repeatedly (and exclusively) refers to the scenario of a state in which collateral review is the first time a defendant may raise a claim of ineffective assistance of counsel"). There is no indication in the Martinez decision that the ruling was intended to apply to federal prisoners such as Lebron.

Third, there also is no indication in Martinez that it was to be applied retroactively. "[A] new rule of constitutional law has been 'made retroactive to cases on collateral review by the Supreme Court' within the meaning of § 2255 only when the Supreme Court declares the collateral availability of the rule in question, either by explicitly so stating or by applying the rule in a collateral proceeding." Sustache-Rivera, 221 F.3d 8, 15 (1st Cir. 2000)(alteration in original)(quoting In re Vial, 115 F.3d 1192, 1197 (4th Cir. 1997)(quoting 28 U.S.C. § 2255)). The Martinez decision does not state that its ruling is available collaterally, and there is no indication that it has been applied in a subsequent collateral proceeding.

Thus, Martinez offers Lebron no assistance. Therefore, because the First Petition was properly dismissed as untimely, thereby rendering it a decision on the merits, the Second Petition is a second or successive petition–for which he must obtain pre-clearance from the First Circuit–unless some other exception applies.

C.   "Actual Innocence" and "Inadequate and Ineffective" Claims

In his Reply, Lebron also asserts that he is actually innocent of the crimes for which he was convicted and that such circumstance, without judicial remedy, inherently results in a complete miscarriage of justice, rendering § 2255 inadequate and ineffective. (Reply at 3.)

As a initial matter, the Court notes that these contentions are first mentioned in Lebron's Reply. (Id.) He devotes less than a page to the arguments combined. (Id.) Thus, the Court would be justified

in deeming these arguments waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); see also Pratt, 129 F.3d at 61 ("It is firmly settled in this circuit that arguments not advanced and developed in an appellant's brief are deemed waived."); cf. DRI LR Cv 7(b)(2)("A reply memorandum shall consist only of a response to an objection and shall not present additional grounds for granting the motion, or reargue or expand upon the arguments made in  support of the motion."). Nonetheless, given the importance of the arguments, the Court will briefly address them.

> The fact that courts have allowed recourse to the savings clause in rare and exceptional circumstances, such as those in which strict adherence to AEDPA's gatekeeping provisions would result in a "complete miscarriage of justice," does not help the petitioner. Most courts have required a credible allegation of actual innocence to access the savings clause.

Trenkler, 536 F.3d at 99 (internal citation omitted); see also id. (noting that the "Supreme Court has defined the term 'miscarriage of justice' as encompassing only 'those extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime'")(quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)); Libby v. Magnusson, 177 F.3d 43, 51 (1st Cir. 1999)(noting that fundamental miscarriage of justice exception "is rarely found applicable, and neither the factual allegations in Libby's petition nor the arguments in his brief give any indication that we are confronted with such an extraordinary situation"). Lebron's contention that he is actually innocent consists merely of allegations, with no factual support whatsoever. He provides a lengthy account of the events leading up to his arrest, which he states was based on an invalid warrant and resulted in illegal detention. (Petition at 3-8.)  In addition, he describes at length how his attorney was allegedly ineffective at the suppression hearing regarding the evidence obtained as a result of the supposedly invalid warrant.[11]

---

[11] Specifically, he faults counsel for only arguing whether the signature on the warrant was genuine and failing to make other arguments with regard to the validity of the warrant. See Second Petition at 9, 14-17.

-11-

(Petition at 8-11, 14-17.) In his Reply, he states that his "claim is based on actual innocence and cannot be procedurally barred." (Reply at 3.) However, he has not made a credible showing that he is actually innocent of the crimes to which he pled guilty. See Trenkler, 536 F.3d at 99.

With respect to the reference to "inadequate and ineffective," (Reply at 3), presumably Lebron is referring to the savings clause of § 2255, see 28 U.S.C. § 2255(e). However, as noted previously, the savings clause cannot be used to circumvent the provisions of AEDPA. See Trenkler, 536 F.3d at 98-99; Barrett, 178 F.3d at 50; see also Sustache-Rivera, 221 F.3d at 12 (noting that courts of appeals have read savings clause narrowly). "The savings clause has most often been used as a vehicle to present an argument that, under a Supreme Court decision overruling the circuit courts as to the meaning of a statute, a prisoner is not guilty within the new meaning attributed to the statute." Sustache-Rivera, 221 F.3d at 16 (footnote omitted). That is not the case here. Thus, the savings clause is of no assistance to Lebron.

II.   Third Petition

The foregoing discussion regarding second/successive petitions and untimeliness is equally applicable to Lebron's Third Petition. Clearly, even ignoring the Second Petition, because the First Petition was denied on the merits, the Third Petition is a second or successive petition. It is time-barred as well.[12] Thus, in order to file the Third Petition in this Court, Lebron must first obtain leave from the First Circuit to do so.[13]

## CONCLUSION

The Court concludes that the Supreme Court's decision in Martinez does not excuse Lebron's

---

[12] See n.5.

[13] Accordingly, as with the Second Petition, the Court need not–indeed cannot–reach the merits of the Third Petition. See Trenkler, 536 F.3d at 96 (noting that absent pre-clearance from the court of appeals, a district court lacks jurisdiction over a second or successive petition).

"procedural default," i.e., the untimeliness of the First Petition. Thus, the Second Petition is a second or successive petition within the meaning of AEDPA, for which he must seek leave from the First Circuit to file. See Cook, 2012 WL 5064492, at *2. Nor are Lebron's arguments that he is actually innocent and that procedural default of his claims would render § 2255 inadequate or ineffective persuasive. Accordingly, the Second Petition is DISMISSED. The Third Petition is also a second or second petition and is DISMISSED. The Additional Motions are DENIED as moot.

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court hereby finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA), because Lebron has failed to seek and receive permission from the First Circuit pursuant to 28 U.S.C. §§ 2244(b)(3)(A) and 2255(h).

Lebron is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. See § 2255 Rule 11(a).

SO ORDERED:

/s/ Mary M. Lisi
Mary M. Lisi

Chief United States District Judge

Date: February 5, 2013